| | |
|---|---|
| | UNITED STATES DISTRICT COURT |
| | CENTRAL DISTRICT OF CALIFORNIA |

| | |
|---|---|
| SHEILA A. STRAINER, | Case No. 5:17-cv-01802-SHK |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Sheila A. Strainer ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying her application for supplemental security income ("SSI"), under Title XVI of the Social Security Act (the "Act"). This Court has jurisdiction, under 42 U.S.C. § 1383(c)(3), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

/ / /

# I. BACKGROUND

Plaintiff filed an application for SSI on October 28, 2014, alleging disability beginning on January 1, 2004. Transcript ("Tr.") 130-36.[1] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on April 11, 2017, ALJ James Carberry determined that Plaintiff was not disabled. Tr. 23-31. Plaintiff sought review of the ALJ's decision with the Appeals Council, however, review was denied on July 26, 2017. Tr. 1-7. This appeal followed.

# II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196)); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing." (citation omitted)). A reviewing

---

[1] A certified copy of the Administrative Record was filed on February 23, 2018. Electronic Case Filing Number ("ECF No.") 20. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

2

court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

## III. DISCUSSION

### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. § 416.920. The claimant carries the burden of proof at steps one

through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [SSI]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).[2]

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [SSI]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [SSI]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [SSI]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and

---

[2] The Court has also considered the parallel regulations set forth in 20 C.F.R. § 416.920 et seq., when analyzing the ALJ's denial of Plaintiff's SSI application.

4

the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [SSI]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2 [("the Listings")]. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [SSI]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [SSI]. See id.

Id. at 1098-99.

**B.  Summary Of ALJ's Findings**

The ALJ found at step one, that "[Plaintiff] has not engaged in [SGA] since October 28, 2014, the application date (20 CFR 416.971 et seq.)." Tr. 25. At step two, the ALJ found that "[Plaintiff] has the following severe impairments: headaches and depressive disorder (20 CFR 416.920(c))." Id. At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in [the Listings]." Tr. 26.

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

5

> perform less than the full range of medium work as defined in 20 CFR 416.967(c). [Plaintiff] can lift/carry and push/pull 50 pounds occasionally and 25 pounds frequently. [Plaintiff] can stand/walk 6 hours in an 8 hour workday, with normal breaks. Sitting is unrestricted. There are no postural restrictions or functional impairments of the hand. [Plaintiff] is limited to simple, routine and repetitive tasks.

Id. At step four, the ALJ found that "[Plaintiff] has no past relevant work. Tr. 29.

In preparation for step five, the ALJ noted that "[Plaintiff] was born on November 25, 1957 and was 56 years old, which is defined as an individual of advanced age, on the date the application was filed (20 CFR 416.963)." Tr. 30. The ALJ observed that "[Plaintiff] had at least a high school education and is able to communicate in English (20 CFR 416.968)." Id. The ALJ then added that "[t]ransferability of job skills is not an issue because [Plaintiff] does not have [PRW] (20 CFR 416.968)." Id.

At step five, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 416.969 and 416.969(a))." Id. Specifically, the ALJ found that Plaintiff could perform the "medium, unskilled" occupations of "hand packager," as defined in the dictionary of occupational titles ("DOT") at DOT 920.587-018, "harvest worker, DOT 403.687-018," and "laundry worker, DOT 361.685-018." Id.

After finding that "[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," the ALJ concluded that "[a] finding of not disabled is . . . appropriate under the framework of the above-cited rule." Id. (internal quotation marks omitted). The ALJ, therefore, found that "[Plaintiff] has not been under a disability, as defined in the . . . Act, since October 28, 2014, the date the application was filed (20 CFR 416.920(g))." Tr. 31.

6

**C. Issue Presented**

In this appeal, Plaintiff raises only one issue: whether the ALJ properly considered Plaintiff's symptom testimony. ECF No. 23, Joint Stipulation at 4.

**1. ALJ's Consideration Of Plaintiff's Symptom Statements**

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 27. The ALJ made the following specific finding with respect to Plaintiff's statements:

> [Plaintiff's] statements are not consistent with the medical evidence. As indicated above, the objective evidence does not support [Plaintiff's] allegations of severity. Moreover, as discussed above, [Plaintiff] has a wide range of activities of daily living [("ADLs")]. Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. The undersigned finds [Plaintiff's] ability to participate in such activities discredits [Plaintiff's] allegations of functional limitations.

Tr. 29.

With respect to the inconsistencies between the medical evidence and Plaintiff's testimony, the ALJ noted that "[i]n 2015, [Plaintiff] reported anxiety, depression, paranoia and auditory hallucinations, but notations indicated that [Plaintiff] had been off her medication and had missed appointments." Id. (citations omitted). The ALJ added that records from 2016 "indicated improvement" and that in August and December 2016, Plaintiff "reported doing better and had a stable mood; she denied nightmares and voices . . . [and] was calm, cooperative, and interacted well." Id. (citations omitted). The also ALJ added that

Plaintiff's medical records during this time period indicated the Plaintiff had "good memory, intellectual functioning[,] and abstract thinking" because Plaintiff "was able to perform serial sevens." Id. (citing Tr. 241).

With respect to the "wide range of [ADLs]" Plaintiff could perform, the ALJ noted earlier in his decision that Plaintiff "does the cooking, shopping, and housekeeping[,]" she "studies the bible and goes to appointments[,]" and "does bible ministry with the homeless people in the park[,]" she "is able to manage funds and pay bills[,]" and "she walks her dog and plans to join a gym." Id.

### 2. **Plaintiff's Argument**

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons for rejecting her testimony. ECF No. 23, Joint Stipulation at 11. Specifically, Plaintiff argues that the ALJ erred by: (1) "simply set[ting] forth the oft rejected boilerplate language that numerous courts have rejected as boilerplate"; (2) rejecting her testimony because it lacks support in the objective medical evidence, "because a rejection of a claimant's testimony based on a lack of objective evidence is always legally insufficient"; and (3) rejecting her testimony based on her ADLs because "the ALJ did not describe how [her ADLs] are inconsistent with [her] specific symptom claims." Id. at 6-12.

### 3. **Defendant's Response**

Defendant responds by arguing that the ALJ provided "multiple valid reasons" for rejecting Plaintiff's symptom statements. Id. at 13. Defendant argues that the ALJ found that Plaintiff's symptom statements were inconsistent with the objective medical evidence and Plaintiff's "admitted level of activity" and also found that Plaintiff's symptoms improved when she adhered to her treatment regimen. Id. at 13-14.

///
///
///

8

### 4. Standard To Review ALJ's Analysis Of Plaintiff's Testimony

When a claimant has medically documented impairments that "might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ must give 'specific, clear, and convincing reasons for rejecting' the testimony by identifying '<u>which</u> testimony [the ALJ] found not credible" and explaining '<u>which</u> evidence contradicted that testimony.'" <u>Laborin v. Berryhill</u>, 867 F.3d 1151, 1155 (9th Cir. 2017) (emphasis in original) (quoting <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 489, 494 (9th Cir. 2015). "This is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in Social Security cases.'" <u>Garrison v. Colvin</u>, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting <u>Moore v. Comm'r Soc. Sec. Admin.</u>, 278 F.3d 920, 924 (9th Cir. 2002)).

"The ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012). Also, while an ALJ cannot reject the severity of subjective complaints solely on the lack of objective evidence, the ALJ may nonetheless look to the medical record for inconsistencies. <u>See</u> <u>Morgan v. Comm'r Soc. Sec. Admin.</u>, 169 F.3d 595, 599-600 (9th Cir. 1999) (finding that "[t]he ALJ provided clear and convincing reasons for rejecting [Plaintiff's] testimony" by "point[ing] to specific evidence in the record—including reports by [Plaintiff's doctors]—in identifying what testimony was not credible and what evidence undermined [Plaintiff's] complaints.").

### 5. ALJ's Decision Is Not Supported By Substantial Evidence

Here, the Court agrees with Plaintiff's argument that the ALJ's boilerplate language at the outset of his adverse credibility finding does nothing to assist this Court with its analysis of the ALJ's finding. <u>See</u> <u>Treichler v. Comm'r Soc. Sec. Admin.</u>, 775 F.3d 1090, 1103 (9th Cir. 2014) (finding that "[a]n ALJ's 'vague

9

allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion is insufficient for our review" and that this "language . . . in ALJ decisions adds nothing" to the Court's analysis of the ALJ's finding (internal citations omitted)). The Court finds, however, that the mere inclusion of this boilerplate language was harmless and does not constitute reversible error. See Laborin, 867 F.3d at 1154-55 (internal citation omitted) (finding "that inclusion of [similar] flawed boilerplate language is not, by itself, reversible error and can be harmless. It does not, however, add anything to the ALJ's determination of either the RFC or the claimant's credibility.").

The Court next turns to the ALJ's finding that Plaintiff's statements are not consistent with the medical evidence, and finds that the Agency needs to reexamine this issue. The ALJ cited treatment notes indicating that Plaintiff had missed medical appointments and had not taken her medications at times as a reason for finding Plaintiff's statements not credible. However, a close inspection of the record reveals that Plaintiff provided good reasons for missing some appointments and for not taking all of her prescribed medication at times.

With respect to Plaintiff missing some of her medical appointments, Plaintiff explained at the hearing that she had forgotten about the appointments and stated that if she does not write her appointments down, if is not given an appointment reminder card, or if the doctor does not call her to remind her of her appointment, she forgets about them. Tr. 49, 50. Because Plaintiff claims that she cannot work primarily due to mental impairments, including difficulty with memory and focus, and because Plaintiff missed some appointments because she had forgotten about them, the Court finds that Plaintiff provided a valid reason for missing some of her medical appointments. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (internal citation omitted) ("[A]lthough a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a

proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment.").

Moreover, Plaintiff's medical records also suggest that she might have had problems attending her medical appointments due to potential restrictions her husband placed on her leaving her home. Tr. 259, 265, 267. For example, in April 2016, Plaintiff's mental health treatment provider, Dr. Jun Yang, noted that Plaintiff "has been missing her appointment for two months. She says her husband caused a lot of stress on her." Tr. 267. In May 2016, Dr. Yang noted, again, that Plaintiff "still complains her husband increase stress on her." Tr. 265. In December 2016, Dr. Yang elaborated on Plaintiff's problems at home by noting that Plaintiff "complains her husband is very controlling[,]" "she is being mentally abused by her husband[,]" and "[s]he needs getting approval before she can leave out[,]" and "wants to move out as soon as possible." Tr. 259. Accordingly, because Plaintiff's attendance issues might have been caused by her inability to leave the house without her husband's permission, in addition to her inability to remember appointments without assistance, the Court finds that Plaintiff's inability to attend all of her medical appointments is not a clear and convincing reason supported by substantial evidence for finding her statements not credible

With respect to the ALJ's reasoning that Plaintiff's statements were not credible because Plaintiff failed to take her medication at times, the record reveals that Plaintiff provided a good reason for this as well. Specifically, Plaintiff reported adverse side effects to several of her medications at multiple points throughout the record. See e.g., Tr. 245 (Zoloft makes Plaintiff nauseous); Tr. 255 (Plaintiff "stopped medication after 2 wks. [because] of [side effects including] vomiting"); Tr. 263 ("Terazosin makes [Plaintiff's] headache [sic]. She doesn't want to continue this medication[]."). Accordingly, because Plaintiff provided a valid reason for not taking all of her medications at times—some of them reportedly

caused nausea, vomiting, and headaches—this was not a clear and convincing reason for finding Plaintiff's statements not credible. Carmickle, 533 F.3d at 1162.

Finally, the ALJ's finding—that Plaintiff's symptom statements were not supported by the medical evidence due to medical improvement in 2016 and Plaintiff's ability to perform serial sevens—is not supported by substantial evidence. With respect to Plaintiff's purported medical improvement in 2016, the ALJ's discussion of the record erroneously ignores findings that demonstrate Plaintiff's condition may not have improved during that time period. See e.g., Tr. 267 (in April 2016, Plaintiff "endorse[d] high level of anxiety[,]" she "still s[aw] shadows and spots frequently" and "fe[lt] paranoiac and suspicious sometimes[,]" and was "isolated and socially withdraw[n]."); Tr. 265 (in May 2016, Plaintiff had three nightmares over the past three months, still felt paranoiac and suspicious "on and off" and was "slightly isolated and socially withdrawa[n]."); Tr. 261 (in October 2016, Plaintiff "endorses worsening anxiety. She has had several panic attacks. She still has nightmares on and off . . . [and] her sleeping has not improved. She lacks energy and her concentration is low."); Tr. 259 (in December 2016, Plaintiff "endorse[d] worsening anxiety, low mood, panic attacks. She has nightmares two to three times a month. She hears voices again and feels paranoiac. She sleeps a[bout] four hours at night."). Accordingly, because the ALJ improperly relied on select portions of Plaintiff's medical records, while ignoring others, the Court finds that Plaintiff's purported medical improvement was not a valid reason for finding Plaintiff's statements not credible. See Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

Moreover, with respect to the ALJ's finding that Plaintiff's ability to perform serial sevens somehow deters from Plaintiff's credibility by indicating that she has greater memory, intellectual functioning, and abstract thinking than she alleged, the record also does not support this conclusion. Rather, a close inspection

12

of the portion of record relied upon by the ALJ for the proposition that Plaintiff can perform serial sevens, reveals that no such finding was made in that portion of the record. See Tr. 241. Further, the Court cannot find anywhere in the record where Plaintiff was found to be able to perform serial sevens. The Court, however, was able to find two instances in the record where Plaintiff was found to be unable to perform serial sevens. See Tr. 253 (the mental status examiner noting that Plaintiff's attempt to perform serial sevens yielded the following "poor" results: "100 – 7 = '96' – 7 = '90'"); Tr. 236 (Plaintiff "could not perform either serial seven subtractions from 100 or serial three subtractions from 100.").

Accordingly, the ALJ's finding that Plaintiff's symptom statements were not supported by the medical evidence, is not a clear and convincing reason for finding Plaintiff's statements not credible.

Finally, the Court turns to the ALJ's finding that Plaintiff's activities undermine Plaintiff's credibility, and finds that the Agency needs to reexamine this for two reasons. First, the ALJ did not elaborate on which daily activities conflicted with which part of Plaintiff's testimony. See Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) (citation an internal quotation marks omitted) ("[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."). Here, as discussed above, the ALJ found that some of the abilities required to perform Plaintiff's "wide range of [ADLs] . . . are the same as those necessary for obtaining and maintaining employment." Tr. 29. This finding is insufficient to meet the "requirements of specificity" contemplated in Burrell. Burrell, 775 F.3d at 1138.

Second, the ALJ overstated Plaintiff's capabilities to perform certain ADLs. For example, contrary to the ALJ's finding that Plaintiff "does the cooking, shopping, and housekeeping[,]" Plaintiff's testimony from the hearing reveals that she was much more limited in her abilities to perform these tasks without any assistance. Tr. 29. Plaintiff testified that she cooks only "once in a while[,]" that

13

she shares the responsibilities of cleaning, shopping, and laundry with her husband, and that her ability to focus prevents her from doing these tasks independently. Tr. 46-47. Specifically, Plaintiff testified that she "can't focus for long enough" to do most tasks, and stated that if, for example, she is "doing dishes and somebody says, hey, can you help me do this and I go help them do it, I can't remember I was doing dishes so I don't do them." Tr. 46. Plaintiff also testified that in addition to distractions from external stimuli that limit her ability to focus and complete tasks, she also has difficulty focusing due to visual and auditory hallucinations, some of which, occur daily. Tr. 48-49. Plaintiff stated that as a result of her inability to focus, she is only able to complete household tasks with the help of her husband, and that when she has attempted to do these tasks on her own in the past, she "messed [them] up." Tr. 49. Plaintiff added that "[i]f [her] husband wasn't there, [she]'d be really having problems." Tr. 50.

Accordingly, the Court finds that Plaintiff's ability to perform these tasks in the limited way they were actually performed—only with the assistance of Plaintiff's husband—is not a clear and convincing reason to reject Plaintiff's statements, because there is no indication in the record of how these tasks, when viewed as they were actually performed, translate to a work setting. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility" and "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."); Orn, 495 F.3d at 639 (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)) (The Ninth Circuit "'has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.'"); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (It is only when a "claimant is able to spend a substantial part of h[er] day engaged in pursuits involving the performance of physical functions that are

transferable to a work setting, [that] a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain.").

### IV. CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). See Garrison, 759 F.3d at 1009 (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." (citation and internal quotation marks omitted)).

IT IS SO ORDERED.

DATED: 7/30/2018

_____
HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge